

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES TRUNK, Administrator of the
Estate of Randall Trunk, Deceased,

   Plaintiff,

   v.

UNITED STATES OF AMERICA,

   Defendant.

No. 04 C 1545
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Currently before me is Defendant's Motion to Reconsider or for Rehearing. For the reasons that follow, the Government's motion is granted. Judgment will be entered in favor of the United States.

### I. BACKGROUND FACTS

This is a medical malpractice case that Plaintiff brought against the United States under the Federal Tort Claims Act. 28 U.S.C. § 1346(b) (2006). The events giving rise to Plaintiff's claims occurred on May 15, 2001. On that day, Randall Trunk ("Mr. Trunk") entered the Lakeside Veterans Administration Hospital to undergo knee replacement surgery. While Mr. Trunk was recovering from the surgery, Drs. Chandrashekhar Joshi and Meg O'Hare (Novotny) administered a femoral nerve block to alleviate Mr. Trunk's pain. During administration of the nerve block, Mr. Trunk experienced grand mal seizures and went into cardiac arrhythmia. Efforts to resuscitate him failed. Mr. Trunk's arrhythmia and subsequent death were caused by the anesthetic that entered his vascular system during the administration of the nerve block.

After a bench trial, I decided in favor of Plaintiff. In my oral ruling following the trial, I concluded, *inter alia*, that Dr. Joshi took an excessive amount of time administering the nerve block, thereby increasing the risk that the needle would move during the course of the procedure. In addition, I found that Dr. Joshi failed to react appropriately or in a timely manner to the potentially catastrophic event.

Shortly after the trial concluded, the United States, pursuant to Rule 59 of the Federal Rules of Civil Procedure, submitted this Motion to Reconsider.

## II. DISCUSSION

### A. Rule 59

In an action tried without a jury, Rule 59 of the Federal Rules of Civil Procedure empowers me to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). This rule confers wide authority upon a trial judge. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996). The Supreme Court also teaches that "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).

A movant may rely upon Rule 59 to direct a court's attention to newly discovered evidence or a manifest error of law or fact. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191-92 (7th Cir. 1990); *see also Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986) (holding that a motion to alter or amend judgment should be granted if it "clearly establish[es] either a manifest error of law or fact or [ ] present[s] newly

2

discovered evidence"). The Rule "enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995) (*citing Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986)).

B.   *The Government's Rule 59 Motion*

The United States has filed a motion to reconsider, arguing that the evidence presented at trial does not support a verdict for Plaintiff. After re-examining the record, I agree.

Because a claim brought under the Federal Tort Claims Act is governed by "the law of the place where the act or omission occurred," the substantive law of Illinois governs Plaintiff's medical malpractice claim. 28 U.S.C. § 1346(b); *see Richards v. United States*, 369 U.S. 1, 9-10 (1962); *see also Gil v. Reed*, 381 F.3d 649, 658 (7th Cir. 2004); *Campbell v. United States*, 904 F.2d 1188, 1191 (7th Cir. 1990).

Under Illinois law, a plaintiff is required to prove three elements in order to establish a medical malpractice claim: (1) the standard of care by which the physician's treatment is measured; (2) a deviation from that standard; and (3) that the deviation proximately caused the plaintiff's injury. *Addison v. Whittenberg*, 529 N.E.2d 552, 556 (Ill. 1988); *Purtill v. Hess*, 489 N.E.2d 867, 872 (Ill. 1986); *Walski v. Tiesenga*, 381 N.E.2d 279 (Ill. 1978). "[A] plaintiff generally must present expert testimony to establish the elements of the cause of action." *Addison v. Whittenberg*, 529 N.E.2d 552, 556 (Ill. 1988).

1.   **Temporal Length of the Procedure**

Upon reviewing the record, I conclude that the amount of time it took to complete the procedure fails to support a verdict for Plaintiff. The only evidence that might even suggest that

3

the length of the procedure violated the standard of care is a contrast between the amount of time Defendant's expert testified that it takes him to do the procedure (1-2 minutes), and the amount of time it took Dr. Joshi to do it (8 minutes total, 3-4 minutes from "needle in"). This time differential is not adequate to support a finding that Dr. Joshi breached the standard of care. First, Defendant's expert did not testify that the standard of care required the procedure to be completed within two minutes, he simply testified that that is how long it takes him to do it.

Moreover, the Illinois Supreme Court has stated:

> [i]t is insufficient for plaintiff . . . merely to present testimony of another physician that he would have acted differently from [Dr. Joshi], since medicine is not an exact science. It is rather a profession which involves the exercise of individual judgment within the framework of established procedures. Differences in opinion are consistent with the exercise of due care.

*Walski*, 381 N.E.2d at 285.

The evidence does not support a finding that the amount of time it took to complete the procedure violated the standard of care. Accordingly, the amount of time it took Dr. Joshi to complete the procedure is insufficient—under Illinois law—to support a verdict for Plaintiff.

### 2. Dr. Joshi's Reaction

After reviewing the record, I conclude that Dr. Joshi's reaction after Mr. Trunk began to react negatively to the anesthetic likewise does not support a verdict for Plaintiff. First, irrespective of whether Dr. Joshi's reaction was, in fact, proper, there was no evidence presented that supports a finding that his reaction was outside of the standard of care. As noted, "a plaintiff generally must present expert testimony to establish the elements of the cause of action." *Addison*, 529 N.E.2d at 556. Absent a finding that the standard of care was breached, a verdict for Plaintiff is inappropriate.

4

Furthermore, assuming *arguendo* that Dr. Joshi's reaction did deviate from the standard of care, there is nothing to suggest that it proximately caused Plaintiff's injury. *Id.* In fact, Plaintiff's expert, Dr. Cullen, testified in his deposition that "by the time [Mr. Trunk] was in arrest . . . there'd be a very small likelihood that [he] would recover anyway." Dr. Cullen went on to note that "the likelihood of recovery once [Trunk] arrested from this incident would be extremely rare . . ."[1]

The evidence does not suggest that Dr. Joshi's reaction violated the standard of care. There is likewise no reason to believe that anything Dr. Joshi might have done in response would have forestalled the eventual outcome. Therefore, Dr. Joshi's reaction is insufficient to support a verdict for Plaintiff.

## III. CONCLUSION

This case is a tragic one. Having presided over the trial, it is clear to me that something was amiss in the performance of this procedure. However, it is my duty to apply the governing law to the facts admitted in evidence.[2] And upon reexamining the record, I cannot conclude that the elements necessary to sustain a medical malpractice claim in Illinois have been established.

---

[1] While this testimony was not presented at trial, I am considering it here. Plaintiff did not argue at trial that Dr. Joshi's reaction proximately caused Mr. Trunk's death. Accordingly, it would not be fair to punish the Government at this stage for failing to rebut an argument that Plaintiff did not advance at trial.

[2] Illinois law does recognize the doctrine of *res ipsa loquitur* in medical malpractice cases. *See Gatlin v. Ruder*, 560 N.E.2d 586, 590-91 (Ill. 1990) (*quoting Spidle v. Steward*, 402 N.E.2d 216, 218 (Ill. 1980). However, Plaintiff did not argue that theory here. In addition, to win on a theory of *res ipsa loquitur*, Plaintiff would have had to present expert testimony that when this procedure does go awry, it is generally because of negligence. It is not clear that this is the case, or that any expert would so testify.

A former Chief Justice of the United States once said:

> The temptation to exceed our limited judicial role and do what we regard as the more sensible thing is great, but it takes us on a slippery slope. Our duty, to paraphrase Mr. Justice Holmes in a conversation with Judge Learned Hand, is not to do justice but to apply the law and hope that justice is done.

*Bifulco v. United States*, 447 U.S. 381, 401-02 (1980) (Burger, C.J., concurring) (internal citations omitted).

Defendant's motion is granted. Judgment will be entered in favor of the United States.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: February 5, 2007